IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHAEL COMPTON,

    Plaintiff,                    No. 2:11-cv-1824 EFB

    vs.

CAROLYN W. COLVIN,[1] Acting Commissioner of Social Security,

    Defendant.                ORDER

    Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. The parties' cross-motions for summary judgment are pending. For the reasons discussed below, the court grants the plaintiff's motion and remands the matter for further consideration.

I.    BACKGROUND

    Plaintiff protectively filed an application for SSI on January 10, 2008, alleging that he had been disabled since December 12, 2005. Administrative Record ("AR") 118. Plaintiff's

---

[1] Michael J. Astrue was previously named as defendant. Carolyn W. Colvin has replaced Astrue and is presently the acting Commissioner of Social Security. Pursuant to Rule 25 (d), Fed. R. Civ. P., Carolyn W. Colvin is automatically substituted as defendant in this action.

1

application was denied initially and upon reconsideration. *Id*. at 57-61, 66-70. On January 20, 2010, a hearing was held before administrative law judge ("ALJ") William C. Thompson, Jr. *Id*. at 31-51. Plaintiff was represented by counsel at the hearing, at which he and a vocational expert ("VE") testified. *Id.*

On March 24, 2010, the ALJ issued a decision finding that plaintiff was not disabled under section 1614(a)(3)(4) of the Act.[2] AR at 14-26. The ALJ made the following specific findings:

> 1. The claimant has not engaged in substantial gainful activity since January 10, 2008, the application date (20 CFR 416.971 *et seq*.).
>
> ...

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq*. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id*.

> 2. The claimant has the following severe impairment: obesity (20 CFR 416.920(c)).
>
> ...
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> ...
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a wide range [of] medium work as defined in 20 CFR 416.697(c).  He can lift and/or carry 50 pounds occasionally and 25 pounds frequently, stand and/or walk at least 6 hours in an 8-hour workday, sit at least 6 hours in an 8-hour workday, and occasionally bend, stoop, twist, squat, kneel, crouch, crawl, and climb stairs or ramps, but not climb ladders, ropes, or scaffolding or work at heights, near moving machinery, or at jobs involving more than simple instructions.
>
> ...
>
> 5. The claimant has no past relevant work (20 CFR 416.965).
>
> 6. The claimant was born [in] 1957 and was 50 years old, which is defined as "closely approaching advanced age", on the date the application was filed (20 CFR 416.963).
>
> 7. The claimant is illiterate and is able to communicate in English (20 CFR 416.964).
>
> 8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).
>
> 9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).
>
> ...
>
> 10.  The claimant has not been under a disability, as defined in the Social Security Act, since January 10, 2008, the date the application was filed (20 CFR 416.920(g)).

*Id.* at 16-26.

Plaintiff requested that the Appeals Council review the ALJ's decision. *Id.* at 5-10. However, on May 13, 2011, the Appeals Council denied review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. *Id*. at 1-3.

## II. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

## III. ANALYSIS

Plaintiff argues that the ALJ erred in (1) failing to find that plaintiff's degenerative disc disease, osteoarthritis of the right shoulder, and osteoarthritis of the right knee were severe impairments at step two of the sequential evaluation process; (2) assessing the impact of plaintiff's morbid obesity on his functional limitations; and (3) rejecting the opinion of

////

////

////

////

plaintiff's treating physician without providing legally sufficient reasons. Pl.'s Mot. for Summ. J., Dckt. No. 17 at 11-19.[3]

### A. Any Error Made at Step Two of the Sequential Evaluation Process was Harmless

Plaintiff argues that the ALJ erred at step two by not finding that his degenerative disc disease, osteoarthritis of the right shoulder, and osteoarthritis of the right knee were severe impairments. Dckt No. 17 at 15-17.

"The step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). The purpose is to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were taken into account. *Yuckert*, 482 U.S. at 153. At step two of the sequential evaluation, the ALJ determines which of claimant's alleged impairments are "severe" within the meaning of 20 C.F.R. § 404.1520(c). "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 96-3p (1996)). The step two severity determination is "merely a threshold determination of whether the claimant is able to perform his past work. Thus, a finding that a claimant is severe at step two only raises a prima facie case of a disability." *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007).

At step two of the sequential evaluation process, the ALJ found that plaintiff's only severe impairment was obesity. AR 16. Plaintiff contends that the ALJ erred by not finding that he had the additional severe impairments of degenerative disk disease and osteoarthritis of the right shoulder and right knee. Dckt. No. 17.

Medical evidence in the record shows that x-rays were performed on plaintiff's lumbar spine on November 17, 2008. AR 391. The x-rays showed disk space narrowing and

---

[3] The page numbers cited herein refer to those assigned by the court's electronic docketing system and not those assigned by the parties.

5

degenerative changes. *Id*. The following day plaintiff was referred to physical therapy. The record also shows that plaintiff's treating physician, Dr. Ahmed, diagnosed plaintiff with degenerative disk disease and assessed various limitations. *Id* at 326. Dr. Ahmed also diagnosed plaintiff with right knee pain and shoulder pain due to mild osteoarthritis changes. *Id.* X-rays of the right knee revealed degenerative change and spurring. *Id*. at 360. X-rays also were conducted on plaintiff's right shoulder, which showed osteoarthritic degenerative spurring and soft tissue calcification. *Id*. at 358. These reports describe and document disk disease and shoulder and knee conditions with associated pain that is more than de minimis. Plaintiff's point that they must be considered and addressed in combination with all impairments at the subsequent stage of the analysis in determining plaintiff's functional capacity for past work or other work is well taken. However, the record shows that, notwithstanding the ALJ's characterization of these impairments as "nonsevere," they were considered at the subsequent stages.

Accordingly, assuming the evidence of record establishes that plaintiff's degenerative disk disease and osteoarthritis of the right shoulder and knee were severe impairments for purposes of step two, the ALJ's finding to the contrary was, at most, harmless. The ALJ considered these impairments when determining plaintiff's RFC at step four. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (finding harmless an ALJ's failure to list certain impairment at step two where ALJ fully evaluated the impairment at step four); *Stout v. Comm'r Soc. Sec. Admin..*, 454 F.3d 1050, 1055 (9th Cir. 2006); *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (if one severe impairment exists, all medically determinable impairments must be considered in the remaining steps of the sequential analysis) (citing 20 C.F.R. § 404.1523); *Burch v. Barnhart*, 400 F.3d 676, 682–82 (9th Cir.2005) (ALJ's failure to find claimant's obesity severe at step two was harmless error where it was considered in determining claimant's RFC).

The ALJ explicitly discussed each of plaintiff's physical impairments in turn at step four. In addition to addressing plaintiff's obesity, the ALJ discussed in detail the medical evidence

1  concerning plaintiff's degenerative disc disease, osteoarthritis of the right knee and osteoarthritis

2  of the left knee. *See* AR 18-20. The ALJ also considered the various medical opinions

3  discussing these impairments. *Id*. at 21-22. Because the ALJ considered plaintiff's degenerative

4  disc disease and osteoarthritis of the right shoulder and knee in assessing plaintiff's RFC, any

5  failure to list these impairments at step two was, at most, harmless.

      B.      <u>The ALJ Did Not Err in Assessing the Impact of Plaintiff's Morbid Obesity</u>

Plaintiff argues that the ALJ failed to properly assess the impact his obesity has on his ability to function in a sustained manner as required by Social Security Ruling ("SSR") 02-01p.[4] Dckt. No. 17 at 19. Specifically, plaintiff argues that the ALJ failed to consider the combined impact of his obesity and his other impairments. *Id*. at 18.

SSR 02-01p describes obesity as "a complex, chronic disease characterized by excessive accumulation of body fat." Obesity "commonly leads to, and often complicates, chronic diseases of the cardiovascular, respiratory, and musculoskeletal body systems." *Id*. "The combined effects of obesity with other impairments may be greater than might be expected without obesity." *Id*. In assessing a claimant's RFC, the ALJ "must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." *Id*. "As with other impairments, the ALJ should explain how he determined whether obesity caused any physical or mental impairments." *Burch*, 400 F.3d at 683 (citing SSR 01-02p).

The ALJ fully discussed the medical evidence concerning plaintiff's obesity:

> There can be no dispute the claimant is morbidly obese. During an examination on December 12, 2005, the treating physician noted the claimant was obese and walked with a limp. An examination note for February 2, 2007 noted the claimant was morbidly obese at 330 pounds and had chronic knee pain. The

---

[4] Social Security Rulings are issued by the Commissioner to clarify the Commissioner's regulations and policies. *Bunnell v. Sullivan*, 947 F.2d 341, 346 n. 3 (9th Cir. 1991). Although they do not have the force of law, they are nevertheless given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

> records from San Joaquin General Hospital indicate the claimant was repeatedly assessed as morbidly obese with chronic knee and low back pain. As of March 4, 2008, the claimant was estimated at 450 pounds, equivalent to a BMI of 68.4. On November 23, 2009, the claimant weighed over 400 pounds.

AR 18.

However, the ALJ also observed that "[n]o treating or examining physician has opined that obesity alone significantly limits the claimant's ability to perform basic work functions or attributed the claimant's back and knee pain to his obesity. However, giving logic its due and the claimant the benefit of the doubt, I find that the claimant's obesity exacerbates his back and knee pain." *Id*. In arguing that the ALJ failed to consider the combined impact of plaintiff's obesity, plaintiff puts great emphasis on the ALJ's use of the word "alone." Dckt. No. 17 at 18. However, the ALJ also found that plaintiff's obesity *exacerbates* the pain in his back and knee. This clearly shows that the ALJ also considered the impact of plaintiff's obesity in conjunction with plaintiff's other impairments, including degenerative disk disease and osteoarthritis in his right knee.

Furthermore, plaintiff points to no evidence in the record showing that his obesity causes greater functional limitations than those contained in the ALJ's RFC determination. Plaintiff contends that a physical therapy note dated February 25, 2009–which states that plaintiff is presented with a catch-22 situation because he needs to work out but working out causes pain– demonstrates additional functional limitations. Dckt. No. 17 at 18. The note, however, simply states that plaintiff experiences pain when exercising; it does not contain an assessment of plaintiff's work-related functional limitations. *See* AR 380. Furthermore, the ALJ's finding that plaintiff's obesity exacerbates his back and knee pain is consistent with the statement that plaintiff experiences pain when he exercises.

Plaintiff also appears to contend that the opinion of his treating physician, Dr. Ahmad, establishes that plaintiff's obesity, in conjunction with other impairments, caused functional limitations not considered by the ALJ. Dckt. No. 17 at 18. Dr. Ahmad diagnosed plaintiff with

lower back pain secondary to degenerative disk disease, mild osteoarthritis of the right knee, shoulder pain due to mild osteoarthritis and questionable calcific tendinitis, and morbid obesity. AR 326.  Although Dr. Ahmad assessed plaintiff with several functional limitations, he did not specifically attribute any of the identified limitations to plaintiff's morbid obesity.  Furthermore, as explained below, the ALJ properly rejected Dr. Ahmad's medical opinion.

Contrary to plaintiff's contention, the ALJ specifically discussed and relied upon evidence in the record concerning the impact of plaintiff's obesity on his RFC.  In assessing plaintiff's RFC, the ALJ gave great weight to the opinion of Dr. Seu, an examining physician. Dr. Seu specifically found that plaintiff has "some postural limitations due to decreased range of motion in his lower back.  Much of this decreased range of motion is due to his morbidly obese habitus." *Id*. at 284.  This assessment is consistent with the ALJ's findings that plaintiff is limited to occasionally bending, stooping, twisting, squatting, kneeling, crouching, crawling, and climbing stairs or ramps.  *Id*. at 16.

Plaintiff fails to point to any evidence supporting his contention that his obesity caused further limitations than those assessed by the ALJ.  Accordingly, the ALJ did not err in assessing the impact of plaintiff's obesity.  *See Burch*, 400 F.3d at 684 (9th Cir. 2005) (finding that the ALJ did not error because "[plaintiff] has not set forth, and there is no evidence in the record, of any functional limitations as a result of her obesity that the ALJ failed to consider.").

   C.  <u>The ALJ Provided Legally Sufficient Reasons for Rejecting the Opinion of Plaintiff's Treating Physician</u>

Plaintiff contends that the ALJ erred in rejecting the opinions of his treating physican without providing legally sufficient reasons. Dckt. No. 17 at 19-23.  The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual.  *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1295 (9th

9

1   Cir. 1996). To evaluate whether an ALJ properly rejected a medical opinion, in addition to
2   considering its source, the court considers whether (1) contradictory opinions are in the record;
3   and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a
4   treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81
5   F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be
6   rejected for "specific and legitimate" reasons, that are supported by substantial evidence. *Id.* at
7   830. While a treating professional's opinion generally is accorded superior weight, if it is
8   contradicted by a supported examining professional's opinion (e.g., supported by different
9   independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d
10  1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).
11  However, "[w]hen an examining physician relies on the same clinical findings as a treating
12  physician, but differs only in his or her conclusions, the conclusions of the examining physician
13  are not 'substantial evidence.'" *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

14   On December 7, 2009, plaintiff's treating physician, Dr. Ahmed, completed a Physical
15  Capacities Evaluation. AR 326. Dr. Ahmed diagnosed plaintiff with lower back pain secondary
16  to degenerative disk disease, mild osteoarthritis of the right knee, shoulder pain due to mild
17  osteoarthritis and questionable calcific tendinitis, and morbid obesity. *Id*. It was Dr. Ahmed's
18  opinion that plaintiff could sit 3 to 4 hours at one time and for 6 to 7 hours total in an 8-hour
19  workday; stand/walk at one time for 0 to 1 hours for a total of 3 to 4 hours in an 8-hour workday;
20  lift and carry 25 pounds occasionally, 20 pounds frequently, and 10 pounds continuously. *Id*.
21  He also opined that plaintiff could push and pull with his left arm, but not with his right. He
22  further opined that plaintiff could occasionally bend and climb, but never squat or crawl. *Id*.

23   The record also contains a comprehensive internal medicine evaluation completed by Dr.
24  Seu, an examining physician. *Id*. at 282-85. Dr. Seu examined plaintiff on March 4, 2008, and
25  diagnosed chest pain consistent with cardiac etiology, morbid obesity, right knee pain with
26  decreased range of motion likely secondary to osteoarthritis, decreased range of motion of the

right shoulder. *Id*. at 281, 284. Dr. Seu opined that plaintiff could stand/walk 6 hours in an 8-hour workday, sit without limitation in an 8-hour workday, ambulate without an assistive device, and lift 50 pounds occasionally and 25 pounds frequently, but would have limitations due to right knee tenderness and right shoulder tenderness. *Id*. at 284. He further opined that plaintiff would have postural limitations in his lower back due to a decreased range of motion caused by morbid obesity. It was also his opinion that plaintiff would have difficulty with prolonged overhead work with his right hand due to decreased range of motion in his shoulder joint. *Id*. at 285.

The record also contains the opinion of a state agency non-examining physician, Dr. Pong. *Id*. at 309-311. Dr. Pong opined that plaintiff could lift/carry 50 pounds occasionally and 25 pounds frequently; stand and/or walk about 6 hours in an 8-hour workday; sit for about 6 hours in an 8-hour workday; and was unlimited in pushing and pulling. *Id*. at 309. He further opined that plaintiff could occasionally climb, kneel, crouch, and crawl; frequently balance and stoop; and occasionally limited in overhead reaching with his right arm. *Id*. at 311.

Dr. Ahmed's opinion that plaintiff had severe functional limitations was contradicted by the opinions of Dr. Seu and Dr. Pong. Thus, the ALJ was required to give specific and legitimate reasons for rejecting Dr. Ahmed's opinion. The ALJ gave the following explanation for why he rejected Dr. Ahmed's opinion:

> First, as noted above, various x-rays patently demonstrate that the claimant had no more than mild degenerative disc and joint disease. Second, Dr. Ahmed's opinion contradicts itself. To the extent the claimant could not use his right arm to push or pull, he would have significant difficulty carrying 25 pounds even occasionally or 20 pounds frequently. Third, at no time before being requested by the claimant's representative to render this opinion did Dr. Ahmed restrict the claimant's activities at home consistent with this opinion.

*Id*. at 21.

As for the first reason proffered by the ALJ, plaintiff does not dispute that the severe limitations assessed by Dr. Ahmed were not supported by x-ray evidence. Rather, plaintiff contends that "Dr. Ahmed also considered the combined impact of all [plaintiff's] assessed

11

impairments, including obesity." Dckt. No. 17 at 21. As specifically discussed above, Dr. Ahmed diagnosed plaintiff with morbid obesity, but he did not specifically state that plaintiff's obesity had any impact on his functional capacity. The opinion provided by Dr. Ahmed only contained his diagnosis and his opinion regarding plaintiff's functional limitations. Dr. Ahmed did not explain what clinical findings supported his assessment. Plaintiff's contention that Dr. Ahmed relied on his obesity and other unidentified impairments in determining his functional limitations is simply speculation.

Furthermore, an ALJ is not required to accept a treating physician's opinion that is conclusory, brief, and unsupported by the record as a whole or objective medical findings. *Batson*, 359 F.3d at 1190. The physical capacities evaluation completed by Dr. Ahmed contained only plaintiff's diagnosis and Dr. Ahmed's opinion concerning plaintiff's functional limitations. It did not reference any medical evidence supporting the opinion. Furthermore, as found by the ALJ, the radiological evidence did not support the severity of the limitations reported by Dr. Ahmed. Accordingly, the ALJ properly discredited Dr. Ahmed's opinion as inconsistent with the objective medical findings.

The ALJ also gave less weight to Dr. Ahmed's opinion because his assessment of plaintiff's functional limitations contained internal contradictions. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (presence of internal inconsistences is a clear and convincing reason for rejecting a treating physician's medical opinion). The ALJ observed that Dr. Ahmed's opinion that plaintiff had no ability to push or pull was inconsistent with his opinion that plaintiff maintained the ability to lift 25 pounds. AR 21. Plaintiff contends, however, that there is no inconsistency between these assessments because the ability to push and pull requires different exertional demands than lifting. Dckt. No. 17 at 21. Though pushing and pulling differs from lifting and carrying, given the absence of any functional explanation from the doctor it is not difficult to see how the ALJ could find it puzzling that a person can use their arm to lift up to 25 pounds, but maintains no ability to push or pull with that same arm. Accordingly, the court finds

12

that the ALJ's interpretation of this evidence was reasonable. *See Thomas*, 278 F.3d at 954 ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld.").

Lastly, the ALJ discredited Dr. Ahmed's opinion because there was no evidence that Dr. Ahmed had limited plaintiff's activities prior to completing the physical capacities evaluation. AR 21. The court agrees with plaintiff that this reason alone is not a compelling basis for rejecting Dr. Ahmed's opinion. *See Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir. 1998) (holding that the purpose for which an opinion is provided is not a legitimate basis for questioning the reliability of the opinion). However, the ALJ did not rely on this reason alone. The ALJ provided other legally sufficient reasons for rejecting Dr. Ahmed's testimony. Accordingly, the court finds that the ALJ properly rejected Dr. Ahmed's opinion.

IV. CONCLUSION

The court finds that the ALJ's decision is supported by substantial evidence and is based on the proper legal standards. Therefore, IT IS ORDERED that:

1. Plaintiff's motion for summary judgment is denied;

2. The Commissioner's cross-motion for summary judgment is granted; and

3. The Clerk is directed to enter judgment in the Commissioner's favor.

DATED: March 29, 2013.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE